UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re

MOOSE M. SCHEIB,

    Debtor.

_____/

Case No. 21-42581

Hon. Mark A. Randon

KELLY SILVERA JARRETT,

    Plaintiff,

v.

MOOSE SCHIEB, a/k/a MUSTAPHA SCHIEB
a/k/a MUSTAPHA CHEAIB,

    Defendant.

SOLOMON M. RADNER (P73653)
PAUL F. DOHERTY (P36579)
**JOHNSON LAW, PLC**
Attorneys for Plaintiff
535 Griswold Street, Suite 2600
Detroit, MI 48226
(313) 324-8300
sradner@venjohnsonlaw.com
pdoherty@venjohnsonlaw.com

## **COMPLAINT**

Plaintiff, through undersigned counsel, states for her Adversary Complaint as follows:

## Jurisdiction

1. This is an adversary proceeding in which the Plaintiff is objecting to the discharge of the debt debtor admits is owed to her; additionally, Plaintiff seeks money damages for debtor's fraud and conversion as stated herein.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

4. Venue is proper pursuant to 28 U.S.C. § 1409(a)

## Background Facts

5. Plaintiff holds dual British and Jamaican, W.I. citizenship and resides in Jamaica.

6. Defendant MOOSE SCHIEB, aka MUSTAPHA SCHIEB aka MUSTAPHA CHEAIB (hereinafter collectively "SCHEIB") resides and conducts business in Wayne County, Michigan and is an attorney licensed or who was licensed by the State of Connecticut.

7. In or about 2014, Plaintiff became acquainted with Defendant SCHIEB; among other things, SCHEIB represented he was an attorney and "EB-5 Agent for the Middle East" a designation he claimed was given by Michigan's Governor, Rick Snyder.

8. Plaintiff made Defendant SCHEIB aware of her desire to obtain a Green Card and immigrate to the United States, mainly to further the education of her children.

9. Defendant SCHEIB represented to Plaintiff that he had unique and valuable immigration contacts which he could take advantage of on Plaintiff's behalf so to assist her in obtaining a visa for her and her sons so that they could immigrate to the United States.

10. The EB-5 program was created by Congress in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors. All EB-5 investors must invest in a "new commercial enterprise" before an immigrant can obtain EB-5 classification. There are many accredited, legitimate Regional Centers throughout the United States through which money can be invested for this purpose.

11. At or about the time Defendant SCHEIB learned of Plaintiff's interest in the EB-5 program and her likely ability to raise at least $500,000.00, Defendant SCHEIB formed Defendant CBIG CCS, LLC, the purported and represented purpose of which was to accept money so "to create a reliable network to represent potential future EB 5 Investors." Among other things, CBIG CCS, LLC represented it would "use worldwide internet advertising, and established Middle East and

Northern Africa ("MENA") region relationships, to generate leads for EB-5 Regional Centers and EB-5 direct investment projects."

12. At the time Defendant SCHEIB made the above representations, CBIG CCS, LLC was not a going concern in that it had no assets, revenue or any on-going business.

13. Defendant SCHEIB represented to Plaintiff the Texas Growth Fund, a reputable EB 5 investment, was "over-subscribed" and, therefore, could not accept funds from Plaintiff. Defendant SCHEIB then recommended the money be transferred to CBIG CCS, LLC which misrepresented qualified as a "new commercial enterprise." In connection with these and other misrepresentations, Defendant SCHEIB gave Plaintiff CBIG CCS, LLC's "business plan" which, among other things, included the representations about Defendant FLG. This "business plan" was an entirely fictitious document which Defendant SCHIEB used to induce Plaintiff to give him $500,000.

14. In reliance on Defendant SCHIEB's misrepresentations, Plaintiff transferred $475,000.00 on July 3, 2016 and $25,000.00 on December 15, 2016 to a CBIG, CCS, LLC bank account.

15. Defendant SCHEIB was not authorized to use Plaintiff's funds for any purpose other than to obtain Plaintiff's EB-5 classification.

16. Defendant SCHEIB did not use the money transferred by Plaintiff to create a "new commercial enterprise" or place it with an accredited Regional Center; instead, Defendant SCHEIB converted the funds to his personal use.

## COUNT I
## CONVERSION

17. Plaintiff incorporates paragraphs 1-16 above.

18. Defendant SCHEIB obtained Plaintiff's money without her consent; that is, the money was entrusted to Defendant CBIG CCS, LLC for the sole purpose of obtaining Plaintiff's EB-5 classification.

19. Defendant SCHEIB diverted Plaintiff's funds for his personal use and/or to the use of other entities controlled by him. The bank records of CBIG CCS, LLC disclose the regular and systematic withdrawal of the funds, often at the rate of $60,000 to $80,000 per month, to fund the temporarily extravagant, but purely made-up, lifestyle Defendant portrayed here and in the Middle East.

20. For example, Defendant SCHEIB has represented that the funds were used in connection with his alleged efforts to sell a diamond, reportedly worth upwards of $100,000,000, in the Middle East; while Defendant SCHEIB has never presented any credible evidence that this was an actual event or transaction, Plaintiff never consented to the diversion of her money from CBIG CCS, LLC or that her funds could be used for anything other than to obtain her EB-5 classification.

21. The acts/omissions of Defendant SCHEIB are a conversion of Plaintiff's funds entitling her to treble damages of $1.5 million, plus interest and attorney fees. MCL 600.2919a.

22. As a direct, proximate and foreseeable result of Defendant's conversion, Plaintiff has sustained damages for which Defendant SCHEIB is responsible as stated above.

## COUNT II
## UNJUST ENRICHMENT

23. Plaintiff incorporates paragraphs 1-22 above.

24. Defendant SCHIEB, received a benefit from Plaintiff; namely, $500,000.00.

25. An inequity will result to Plaintiff if Defendant SCHIEB is allowed to retain the benefit.

26. Defendant SCHIEB has been unjustly enriched at Plaintiff's expense.

27. As a direct, proximate and foreseeable result of Defendants' unjust enrichment, Plaintiff has sustained damages for which Defendants are responsible as stated above.

## COUNT III
## FRAUD AND MISREPRESENTATION

28. Plaintiff incorporates paragraphs 1-27 above.

29.  Defendant SCHEIB made material misstatements of fact to induce Plaintiff to transfer $500,000.00 to Defendant CBIG CCS, LLC, an entity over which he had total and complete control.  These misrepresentations included:

   a. CBIG CCS, LLC was a legitimate "new commercial enterprise" as defined by the United States Citizenship and Immigration Services;

   b. he was an "EB-5 Agent for the Middle East" as designated he claimed by Michigan's Governor, Rick Snyder; and

   c. Plaintiff's money, $500,000.00, would only be used to obtain Plaintiff's EB-5 classification.

30.  Defendant SCHEIB made the foregoing and other representations knowing them to be false or made the assertions recklessly without knowledge of their truth as positive assertions and with the intent that they be relied upon by Plaintiff.

31.  Plaintiff relied on Defendant SCHEIB's misrepresentations and, as a direct consequence, suffered damages.

32.  The conduct of Defendant SCHEIB was outrageous and in willful and wanton disregard of Plaintiff's rights entitling Plaintiff to exemplary damages of at least $10 million.

33.  Alternatively, Defendant SCHEIB failed to disclose the true state of affairs concerning the status of CBIG CCS, LLC, including its lack of certification

as a legitimate "new commercial enterprise" as defined by the United States Citizenship and Immigration Services; its lack of working capital; its lack of any business whatsoever; its lack of staffing or that it was otherwise simply a "pipe dream" of Defendant SCHEIB and could not possibly be a productive or successful venture.

34. As a direct and proximate result of Defendant SCHEIB's wrongful conduct as described herein, Plaintiff has sustained damage and is entitled to compensation as requested herein.

## COUNT IV
## BREACH OF CONTRACT

35. Plaintiff incorporates paragraphs 1-34 above.

36. A contract existed between Plaintiff and Defendant SCHIEB, the terms of which included that Plaintiff's money would only be placed with an accredited Regional Center or a legitimate "new commercial enterprise" as defined by the United States Citizenship and Immigration Services and that in the event the money could not be so placed, it would immediately be returned to Plaintiff.

37. Defendant SCHIEB failed to place Plaintiff's with an accredited Regional Center or a legitimate "new commercial enterprise" as defined by the United States Citizenship and Immigration Services; nonetheless, Defendant has failed to return Plaintiff's money thus breaching the contract.

38. Defendant SCHIEB had a duty to promptly return Plaintiff's funds; despite repeated requests, Defendant SCHIEB has refused and/or failed to return Plaintiff's funds thus breaching the agreement.

39. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in the principal amount of $500,000.00 plus interest and attorney fees.

WHEREFORE, Plaintiff respectfully requests this Court make and enter a Judgment against Defendant as follows:

a. in the principal amount of $500,000 plus interest and attorney fees;

b. that the principal amount be trebled to $1.5 million pursuant to MCL 600.2919a;

c. Plaintiff be awarded exemplary/mental anguish damages in an amount no less than $10 million; and

d. any other relief, equitable or otherwise, to which Plaintiff is found to be entitled.

Respectfully submitted,
**JOHNSON LAW, PLC**

By: */s/ Solomon M. Radner*
**SOLOMON M. RADNER (P73653)**
**PAUL F. DOHERTY (P36579)**
**VEN R. JOHNSON (P39219)**
Attorneys for Plaintiff

Date: July 27, 2021

535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
pdoherty@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com
sradner@venjohnsonlaw.com

10