UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re<br><br>MOOSE M. SCHEIB,<br><br>    Debtor.<br><br>_____<br><br>KELLY SILVERA JARRETT,<br><br>    Plaintiff,<br><br>v.<br><br>MOOSE SCHEIB,<br><br>    Defendant. | Chapter 7<br>Case No. 21-42581<br>Hon. Mark A. Randon<br><br><br><br>Adversary Proceeding<br>Case No. 21-04167 |
| PAUL F. DOHERTY (P36579)<br>VEN R. JOHNSON (P39219)<br>**JOHNSON LAW, PLC**<br>Attorneys for Plaintiff<br>535 Griswold Street, Suite 2600<br>Detroit, MI 48226<br>(313) 324-8300<br>pdoherty@venjohnsonlaw.com<br>vjohnson@venjohnsonlaw.com | MOOSE M. SCHEIB<br>IN PRO PER<br>15 Bradford Ct., Unit 27<br>Dearborn, MI 48126-4170 |

## **JOINT FINAL PRETRIAL STATEMENT**

    The Parties, through counsel, hereby submit this Joint* Final Pretrial

Statement:

1

\* Plaintiff's counsel reached out several times to Defendant via email requesting he provide his portions of the JFPTS in advance of the 09/01/2022 due date set by the Court, ultimately advising Defendant if his portions were not submitted by noon on 09/01/2022, the JFPTS would be filed containing only Plaintiff's portions. As of the filing of this proposed order, Defendant had not provided Plaintiff's counsel with anything.

**(1) JURISDICTION:** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b), because this case arises in and relates to a Chapter 7 bankruptcy pending case. The bankruptcy court has jurisdiction over matters that are "related to" the bankruptcy proceeding. *Mich. Empl. Sec. Comm'n v. Wolverine Radio Co.* (In re Wolverine Radio Co.), 930 F.2d 1132, 1142 (6th Cir. 1991). To determine whether a matter is "related to" the bankruptcy proceeding, the Sixth Circuit looks at whether the outcome of this matter "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 1142 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). This case also involves core matters, pursuant to 28 U.S.C. § 157(b)(2)(A),(E),(H).

**(2) PLAINTIFF'S CLAIMS:**

This is an action for conversion, Count I, unjust enrichment, Count II, misrepresentation, Count III and breach of contract, Count IV.

Plaintiff holds dual citizenship, British and Jamaican. In 2016, she desired to immigrate to the United States under the "EB-5 Immigrant Investor Program" which requires that a person seeking to immigrate United States invest at least $500,000 in a U.S.-based "New Commercial Enterprise" (NCE). To induce Plaintiff transfer $500,000 to him, Defendant Schieb, an attorney, falsely represented that he was an "EB-5 agent" for the State of Michigan and his company, CBIG CCS LLC ("CBIG"), qualified as a NCE. Relying on these representations, Plaintiff sent $500,000.00 to CBIG's account at mBank via two wire transfers; the first occurred on July 3, 2016 for $475,000.00, and a second wire transfer for $25,000 was made on December 15, 2016. Both Wire Transfer Confirmation forms contained the memo: "EB5 INVESTMENT." Consistent with her desire to pursue an EB-5 application, in September 2016, Plaintiff retained attorney Rohit Turkhud of Fakhoury Law Group, a firm which specializes in immigration law, to handle the legal work surrounding Plaintiff's EB-5 application, including preparing the I-526 Immigration Petition, which must document the immigrant has invested or is in the process of investing the required capital in either a NCE or EB-5 Regional Center Program.

Defendant Scheib was the only member of CBIG and had sole control over its mBank account, which was opened only days before Plaintiff made the $475,000 deposit. Beginning two days after the funds were received, Defendant began the systematic withdrawal of Plaintiff's money and within 10 months, Defendant had converted all of Plaintiff's funds, taking on average over $50,000 per month. Defendant has admitted none of the money was invested in a legitimate NCE or otherwise used to further Plaintiff's EB-5 application. On the contrary, Plaintiff's money went to fund Defendant's lavish, but illusory, lifestyle which included multiple trips to the Middle East, extended stays at luxury hotels, and a $10,000 membership in Quintessentially USA, which touts itself as the "world's leading luxury lifestyle group." Defendant also made cash transfers of over $450,000 to other accounts he controlled, primarily one in the name of Cedar Bey. From both the CBIG and Cedar Bey accounts, Defendant spent lavishly, none of it for the benefit of Plaintiff or her EB-5 application. All the while, both Plaintiff and attorney Turkhud made multiple inquires to Defendant regarding the status of Plaintiff's investment in CBIG so that the I-526 could be completed and Plaintiff's EB-5 application filed. Defendant repeatedly provided false information regarding CBIG, but was never able to provide the required verification, compelling Mr. Turkhud to withdraw from representing Plaintiff. Obviously concerned, Plaintiff began demanding that Defendant return her money only to be met with multiple false

promises of repayment by Defendant. Plaintiff eventually filed a civil action in the Wayne County Circuit Court (stayed upon the filing of his petition in this Court), a Grievance with the Connecticut State Bar and a complaint with the Michigan Corporations, Securities & Commercial Licensing Bureau.

To deflect his conversion, Defendant falsely claims the money Plaintiff transferred to CBIG was a "loan" *to him* to be used anyway he wanted, while admitting there are no loan documents, promissory notes, no repayment date or loan terms of any kind. The "loan defense" was rejected by an Administrative Law Judge in the matter of the *Corporations, Securities & Commercial Licensing Bureau v. CBIG CCS, LLC, and Mustafa Schieb,* Docket No. 19-015975, State of Michigan Office of Administrative Hearings. A trial was conducted commencing December 11, 2019 "under the jurisdiction of the Michigan Uniform Securities Act (2002), 2008 PA 551, as amended, MCL 451.2101, *et. seq*." On February 13, 2020, Administrative Law Judge Erick Williams issued his Decision *rejecting* Defendant's "loan" argument. According to Judge Williams: "Mr. Schieb offered – and Ms. Silvera paid for – an investment in CBIG CCS, LLC. Those facts bring the transaction under MCL 451.2301 and MCL 451.250 …. The fact that Silvera sent her $500,000.00 to CBIG CCS, LLC, implies that she intended the money as an EB-5 investment, that is, as an investment that would qualify her for an EB-5 Visa." Judge Williams recommended that Defendant Schieb and CBIG each be fined

$20,000. On May 5, 2020 a Final Order was entered by the Corporations, Securities & Commercial Licensing Bureau Director affirming the $20,000 fine assessed against Defendant. No appeal, circuit court challenge, etc. was initiated. Therefore, collateral precludes Defendant from relitigating the investment vs. loan issue.

Plaintiff's claims are for common law and statutory conversion under MCL 600.2919(a)(1) which provides for the trebling of actual damages. Plaintiff is, therefore, entitled to $500,000.00 for the principal amount stolen, which is to be trebled to $1,500,000.00.

**(3) DEFENDANT'S CLAIMS: None provided by Defendant**

**(4) STIPULATION OR ADMISSION OF FACTS AND LAW:**

Defendant's failure to collaborate means there are no stipulations of fact or law.

**(5) ISSUES OF FACT TO BE LITIGATED:**

1. Did Defendant convert $500,000 belonging to Plaintiff?
2. Was Defendant unjustly enriched by his receipt of $500,000 in funds to which he had no right?
3. Did Defendant make material misrepresentations to Plaintiff to induce her to transfer $500,000 to CBIG CCS LLC?
4. Did Defendant breach a contract with Plaintiff when he withdrew her funds from the CBIG CCS LLC account and did not use them in furtherance of her EB-5 application?

5. Was Defendant's conduct egregious warranting an award of exemplary damages?

**(6) ISSUES OF LAW TO BE LITIGATED:**

1. Does collateral estoppel and/or res judicata preclude the relitigation of the finding of State of Michigan Office of Administrative Hearings' Opinion that the monies advanced by Plaintiff were an investment in CBIG CCS LLC and not a loan to Defendant personally?

    a. <u>Plaintiffs Supporting Cases</u>: *Storey v Meijer, Inc.* 431 Mich 368, 373; 429 NW 2nd 169 (1988); *Senior Accts., Analysts & Appraisers Ass'n v. City of Detroit*, 60 Mich. App. 606, 231 N.W.2d 479 (1975), *aff'd*, 399 Mich. 449, 249 N.W.2d 121 (1976); *Dearborn Heights Sch. Dist. No. 7 v. Wayne Cnty. MEA/NEA*, 233 Mich. App. 120, 592 N.W.2d 408 (1998).

    b. <u>Defendants Supporting Cases</u>: None provided.

2. In the event of a finding of conversion, is Plaintiff entitled to treble damages pursuant to MCL 600.2919a(1)?

    a. <u>Plaintiffs Supporting Cases</u>: *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*, 497 Mich. 337, 871 N.W.2d 136 (2015); *Hoffenblum v. Hoffenblum*, 308 Mich. App. 102, 863 N.W.2d 352

(2014); *Alken-Ziegler, Inc. v. Hague*, 283 Mich. App. 99, 767 N.W.2d 668 (2009).

    b. <u>Defendants Supporting Cases</u>: None provided.

3. In the event Defendant's conduct is found to be willful and egregious, is Plaintiff entitled to exemplary damages?

    a. <u>Plaintiffs Supporting Cases</u>: *Veselenak v Smith*, 414 Mich. 567, 573; 327 N.W.2d 261 (1982); *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980); and *McPeak v. McPeak,* 233 Mich. App. 483, 593 N.W.2d 180 (1999).

    b. <u>Defendants Supporting Cases</u>: None provided.

**(7) EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL:**

<u>From Plaintiff</u>: Defendant has failed to disclose witnesses or proposed exhibits; therefore, Plaintiff cannot anticipate possible evidentiary problems. Plaintiff will request an order that Defendant be precluded from offer witnesses or exhibits.

<u>From Defendants</u>: None identified.

**(8) WITNESSES AND EXHIBIT LISTS:**

    **a. <u>Witnesses and Exhibits for Plaintiff</u>:**

        i. **Live Witnesses**:
        Kelly Silvera Jarrett
        Moose Scheib
        Rohit Turkhud (likely by deposition)

Rami D. Fakhoury (likely by deposition)

James Cline

Natalie June

Any keeper of the records necessary to authenticate records to the extent authentication is disputed.

    ii. **Lay depositions**: Plaintiff reserves the right to offer the deposition testimony Rohit Turkhud or Rami Fakhouri to the extent either of these witnesses are unavailable at the time of trial.

    iii. **Live expert**: None

    iv. **Expert depositions**: None

    v. **Plaintiff's Exhibits**:

1. HSBC Funds Transfer Form, 07/03/2016, $475,000
2. HSBC Funds Transfer Form 12/15/2016, $25,000
3. Email from Moose Scheib to Kelly Silvera, 03/31/14
4. CBIG Call Center Service LLC, company description
5. CBIG Business Plan, October 2015
6. CBIG CCS LLC acknowledgement of receipt of funds, 09/09/2016
7. CBIG CCS LLC Company Agreement
8. Email from Rohit Turkhud to M. Scheib re retainer agreement
9. Fakhoury Law Group EB-5 Retainer Agreement
10. Fakhoury Law Group, Kelly Jarrett EB-5 Fee Schedule
11. Fakhoury Law Group, Immigration Brochure

12. Fakhoury Law Group, EB-5 Regional Center – Immigrant Investor Flow Chart
13. Email thread to/from Plaintiff and Turkhud, 08/08/16
14. Email from Plaintiff to Turkhud, 08/25/16
15. Email from Turkhud to Plaintiff, 09/05/16
16. Email from Turkhud to Plaintiff, 09/14/16
17. Email thread to/from James Cline and Turkhud, 09/15/16
18. Email from Plaintiff to Defendant, 10/27/16
19. Email from Turkhud to Plaintiff, 10/27/16
20. Email from Plaintiff to Turkhud, 11/18/16
21. Email from Turkhud to Plaintiff, 11/27/16
22. Email from Turkhud to Plaintiff, 11/27/16
23. Email thread to/from Plaintiff and Turkhud, 12/05/16
24. Email from Plaintiff to Cline, 12/05/16
25. Email from Plaintiff to Turkhud, 12/07/16
26. Email from James Cline to Plaintiff, 12/07/16
27. Email from Turkhud to Cline, 12/08/16
28. Email from Turkhud to Cline, 12/08/16
29. Email from Fakhoury to Defendant, 12/08/16
30. Email from Turkhud to Plaintiff, 12/15/16
31. Email from Turkhud to Plaintiff, 12/18/16
32. Email from Plaintiff to Turkhud, 12/19/16
33. Email from Plaintiff to Turkhud, 01/08/17
34. Email from Turkhud to Plaintiff, 01/11/17
35. Email from Plaintiff to Turkhud, 01/11/17
36. Email from Plaintiff to Defendant and Cline, 01/23/17
37. Email from Plaintiff to Turkhud, 01/25/17

38. Email from Turkhud to Plaintiff, 01/25/17

39. Email from Turkhud to Plaintiff, 01/25/17

40. Email from Turkhud to Plaintiff, 02/25/17

41. Email from Plaintiff to Turkhud, 02/25/17

42. Email from Turkhud to Plaintiff, 02/26/17

43. Email from Wolff to Plaintiff, 03/22/17

44. Email from Plaintiff to Wolff, 03/24/17

45. Sample I-526 Immigrant Petition by Alien Investor

46. Email from Defendant to Husseini, 10/27/15

47. Texas Growth Fund Brochure

48. Email from Turkhud to Defendant, 06/28/16

49. Email from Defendant to Plaintiff, 01/07/17

50. Email from Defendant to Cline, 01/25/17

51. Letter from Defendant to Mark Galliver/LARA

52. Email from Defendant to Wm. Mack, 06/06/16

53. Email from Cline to Turkhud, 12/08/16

54. Affidavit of Moose Scheib, 09/21/18

55. CBIG CCS LLC Financial Projections

56. Hearing Transcript, Corporations and Securities & Commercial Licensing Bureau v. Mustafa Scheib, Docket Nos. 19-015975 and 19-015977

57. Email from Defendant to Plaintiff, 04/15/18

58. Audi/Transcript of audio recording from Moose Scheib, November 1, 2017

59. Email from Turkhud to Plaintiff, 01/25/17

60. Fakhoury Law Group Retention Invoicing

61. Email from Defendant to Plaintiff, 01/07/17

62. Email from Defendant to Plaintiff, 06/06/18

63. Email from Plaintiff to Defendant, 07/31/18

64. Email from Cline to Plaintiff, 01/24/17

65. Email Turkhud to Plaintiff, 11/27/17

66. Sale of home accounting

67. Text message thread between Plaintiff and Defendant

68. mBank records, Account No. 50510602

69. mBank Records, Account No. 50509183

70. mBank Records, Account No. 50510815

71. Summary of conversion by month, July 2016 through April 2017.

72. Defendant's Accounting for $500,000

xi. **Witnesses and Exhibits for Defendant:** None identified.

xii. **Objection(s):** Plaintiff objects to Defendant calling any witnesses or offering any witness testimony given his failure to participate in the formulation of this order or identify witnesses or exhibits.

**(9) DAMAGES:** Plaintiff sustained the loss of the monies entrusted to Defendant. Plaintiff is entitled to the $500,000 principal amount converted plus trebling to $1,500,000 under MCL 600.2919a(1). Plaintiff also seeks damages for her emotional trauma and/or exemplary damages. In Michigan, an award of exemplary damages is considered proper if it compensates a plaintiff for the "humiliation, sense of outrage, and indignity" resulting from injuries "maliciously, wilfully and wantonly" inflicted by the defendant. *Kewin v. Mass. Mut. Life Ins. Co.*,

409 Mich. 401, 295 N.W.2d 50 (1980). The theory of these cases is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings. *Id.*

    **(10) ESTIMATED LENGTH OF TRIAL:**

        c. **Bench Trial**

        d. **Time for Plaintiff's Proofs**: 1-2 days

        e. **Time for Defendant's Proofs**: No estimate provided.

**(11) ARBITRATION:** Plaintiff does not agree to arbitration.

**(12) STATEMENT RE SETTLEMENT:** From Plaintiff's perspective, discussing settlement with Defendant is pointless given he has no money, no job, etc.

**(13) FILING OF TRIAL BRIEFS:** Plaintiff agrees to file a trial brief and proposed findings of fact at least three (3) business days before trial.

Approved as to form and for entry:

*/s/ Paul F. Doherty*
Paul F. Doherty (P36579)
Attorney for Plaintiff                           September 1, 2022